IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

```
UNITED STATES OF AMERICA       :        CRIMINAL ACTION
                               :
          v.                   :
                               :
MARIO RIVERA                   :        NO. 08-41-6
     a/k/a "Bodie"             :
JOHN JAUDON                    :        NO. 08-41-8
JULIAN JOSEPH                  :        NO. 08-41-11
     a/k/a "Rude Boy"          :
KENDALL KINCHEN                :        NO. 08-41-16
```

MEMORANDUM

Bartle, C.J.                                    April 24, 2009

Before the court are the post-trial motions of defendants Mario Rivera, John Jaudon, Julian Joseph, and Kendall Kinchen pursuant to Rules 29 and/or 33 of the Federal Rules of Criminal Procedure.

The government indicted 16 people, including the four defendants, in a 114-count superseding indictment. Mario Rivera was charged with six counts of possession with intent to distribute cocaine base ("crack") and one count possession with intent to distribute five grams or more of cocaine base ("crack"); John Jaudon was charged with eight counts of possession with intent to distribute cocaine base ("crack") and one count possession with intent to distribute five grams or more of cocaine base ("crack"); Julian Joseph was charged with eight counts of possession with intent to distribute cocaine base ("crack") and four counts possession with intent to distribute five grams or more of cocaine base ("crack"); and Kendall Kinchen

was charged with six counts of possession with intent to distribute cocaine base ("crack") and one count possession with intent to distribute five grams or more of cocaine base ("crack").

The jury returned a verdict of guilty on one count of possession with intent to distribute five grams or more of cocaine base ("crack") as to Mario Rivera (Count 1)[1]; one count of possession with intent to distribute cocaine base ("crack") as to John Jaudon (Count 13)[2]; two counts of possession with intent to distribute cocaine base ("crack") as to Julian Joseph (Counts 17 and 18)[3]; and three counts of possession with intent to distribute cocaine base ("crack") as to Kendall Kinchen (Counts 29, 31, and 33)[4].  The defendants were found not guilty on all other counts against them.

At the close of the prosecution's case-in-chief, the court denied the motions of the four defendants for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure.  Now before the court are four post-trial motions of

1.  For the purpose of the verdict sheet, a redacted and renumbered superseding indictment was created and submitted to the jury for its consideration of the charges against defendants Rivera, Jaudon, Joseph, and Kinchen.  Count 1, of which Rivera was convicted, was Count 22 on the original superseding indictment.

2.  Count 13 was Count 57 in the original superseding indictment.

3.  Counts 17 and 18 were Counts 77 and 78 respectively in the original superseding indictment.

4.  Counts 29, 31, and 33 were Counts 108, 110, and 112 respectively in the original superseding indictment.

the defendants.  Mario Rivera and Kendall Kinchen[5] have each
moved for a new trial under Rule 33 of the Federal Rules of
Criminal Procedure.[6]  John Jaudon submitted a pro se letter to
the court requesting a judgment of acquittal under Rule 29.  In a
telephone conference with counsel on April 17, 2009, his
attorney, James Brose, asked the court to treat the submission as
if he had filed it as a motion on behalf of his client.  We will
do so.  Julian Joseph, although represented, filed a pro
se motion for judgment of acquittal under Rule 29.[7]  A
substantial portion of the evidence introduced at trial relates
to all four defendants.

I.

Pursuant to Rule 33, "Upon the defendant's motion, the
court may vacate any judgment and grant a new trial if the

---

5.  In addition to his motion for a new trial, Kendall Kinchen
wrote separately to the court to request appointment of counsel
because he no longer has sufficient funds to retain his trial
attorney Glenn Goodge.  Mr. Goodge, however, has not sought to
withdraw as the attorney of record and submitted the instant
motion to the court.  We will therefore disregard Kinchen's
request.

6.  Although Rivera and Kinchen offer "insufficient evidence" as
the ground for their motions, the proper ground for a Rule 33
motion is that the verdict was against the weight of the
evidence.  See United States v. Gagliardi, No. CRIM. 04-CR-796,
2005 WL 1592947, 7 (E.D. Pa. July 5, 2005).  We will therefore
consider their motions under the weight of the evidence standard.

7.  Joseph also makes a brief, unsubstantiated request to relieve
current counsel and for "appointment of effective assistance of
counsel."  This request is without merit and will be denied.

interest of justice so requires." Fed. R. Crim. P. 33.  Our
Court of Appeals has instructed that

> [a] district court can order a new trial on
> the ground that the jury's verdict is
> contrary to the weight of the evidence only
> if it believes that there is a serious danger
> that a miscarriage of justice has occurred--
> that is, that an innocent person has been
> convicted....  [W]hen a district court
> evaluates a Rule 33 motion it does not view
> the evidence favorably to the Government, but
> instead exercises its own judgment in
> assessing the Government's case....
> [M]otions for a new trial based on the weight
> of the evidence are not favored.  Such
> motions are to be granted sparingly and only
> in exceptional cases.

United States v. Brennan, 326 F.3d 176, 189 (3d Cir. 2003)
(internal citations and quotations omitted).

Mario Rivera moves for a new trial under Rule 33 on the
grounds that the evidence did not support:  (1) a verdict of
guilty on Count 1 (possession with intent to distribute cocaine
base ("crack") on October 19, 2007); (2) the jury's finding on
the special interrogatory that the cocaine base ("crack") Rivera
possessed in Count 1 weighed five grams or more; and (3) the
jury's finding that the substance possessed by Rivera was in fact
a mixture or substance that contained cocaine base.

The evidence introduced at trial included the
following.[8]  Prior to his arrest in January, 2008, Sean Rogers,
with the assistance of his wife Anna Baez, was a distributor of

---

8.  All counsel have agreed that due to the recency of the trial
they would not need the aid of the transcript to proceed with
post-trial motions.

crack cocaine in Easton, Pennsylvania.  Both of them were indicted in this case, and both pleaded guilty and were government witnesses.  Rogers purchased large quantities of powder cocaine from his supplier in Brooklyn, New York, which he cooked into crack and sold to street-level drug dealers in Easton.  Rogers and Baez both testified that Mario Rivera was a regular customer and that the nature of their relationship with Rivera was strictly "business," that is, the sale of crack cocaine.  Telephone records established more than 1,100 contacts between Rogers' telephone and Rivera's telephone over a several month period.  At the time of Rogers' arrest, police found digital scales in his home as well as 600 grams of powder and crack cocaine and packaging supplies suggestive of the ongoing packaging and distribution of crack cocaine.

Multiple witnesses, including Rogers, Baez, co-defendant Oliver Sims, and FBI Special Agent Cliff Fiedler, testified that Rogers sold crack cocaine only in quantities of an eightball or larger.  The record establishes that an eightball is one-eighth of an ounce of crack cocaine and is equivalent to 3.5 grams.  Multiple witnesses testified that crack cocaine dealers in Easton divide eightballs into at least seventeen "twenties," or twenty dollar bags of crack, which is the most common quantity sold to crack users in Easton.  Special Agent Fiedler, an expert in narcotics trafficking, stated on the witness stand that a purchase of an eightball of crack cocaine is consistent with an intent to distribute.  Narcotics expert Michael Mish stated that

multiple purchases of eightballs in a given week and repeat
purchases in a single day are consistent with an intent to
distribute.  When asked for his opinion as to whether eightballs
could be purchased for personal use, Jaudon's narcotics usage
expert David Left responded that it would take at least eight
hours for a heavy user on a binge to smoke one eightball of crack
cocaine.

Recorded wiretapped telephone conversations between
Rivera and Rogers on October 19, 2007, the date relevant to Count
1, included six separate telephone calls between 6:10 P.M. and
6:48 P.M.  In those calls Rivera and Rogers arranged to meet, and
Rivera is heard to say "I want three all together."  Rogers
testified that Rivera meant three eightballs and that Rogers sold
them to him that day.  Three eightballs is equivalent to 10.5
grams of crack cocaine, which clearly meets the definition of the
"five grams or more" necessary for Rivera's conviction.

There was clearly sufficient evidence for the jury to
find Rivera guilty on Count 1.  There is no serious danger that a
miscarriage of justice has occurred or that an innocent person
has been convicted.  While the government did not present
scientific evidence or lab reports to prove that the substance
possessed by Rivera was crack cocaine, ample testimony
established that it was.  Accordingly, we will deny Rivera's
motion for a new trial.

Kendall Kinchen also moves for a new trial under Rule
33.  He argues that the evidence presented did not support a

verdict of guilty on Counts 29, 31, or 33, which charged that on
November 22, 2007, November 26, 2007, and November 30, 2007
respectively "defendant knowingly and intentionally possessed
with intent to distribute a mixture and substance containing a
detectable amount of cocaine base ("crack")."  Kinchen further
contends that the evidence did not support a finding that the
substance he possessed was in fact a mixture or substance
containing cocaine base ("crack").

In addition to the evidence discussed above regarding
Rogers' drug business and crack cocaine dealing practices in
Easton, evidence introduced at trial established approximately
130 contacts between Kinchen's telephone and Rogers' telephone
over a several month period.  Rogers testified that his
relationship with Kinchen was exclusively as a seller of crack
cocaine.

Wiretapped telephone recordings between Rogers and
Kinchen included conversations on November 22, 2007 wherein
Kinchen said "I need two" and the pair arranged to meet.  Rogers
confirmed in his testimony that Kinchen had ordered two
eightballs of crack cocaine that day and that Rogers sold them to
him.  A series of telephone calls recorded on November 26, 2007
ended with one in which the following was said:

```
Rogers:  Yo.
Kinchen: Yo, um, yeah, I'm over here.
Rogers:  Alright, I'm comin' right now, what
         you need one?
Kinchen: Yeah.
Rogers:  Alright.
```

Rogers testified that Kinchen had ordered one eightball and that he sold it to him that day.  Likewise, six recorded telephone conversations between Kinchen and Rogers on November 30, 2007 reveal that the two arranged to meet twice on that date.  Rogers testified that he sold at least one eightball of crack cocaine to Kinchen on November 30, 2007.  As previously noted, expert testimony established that purchases of eightballs of crack cocaine are consistent with an intent to distribute.  Based on this and other evidence, we find that the jury had sufficient evidence to convict, and there is no serious danger that a miscarriage of justice has occurred or that an innocent person has been found guilty.  Kinchen argues that the government did not present scientific evidence or lab reports to prove that the substance he possessed was crack cocaine.  However, ample fact testimony established that it was.  Accordingly, we will deny Kinchen's motion for a new trial.

II.

Under Rule 29, a court must grant a motion for judgment of acquittal if the "evidence is insufficient to sustain a conviction."  Fed. R. Crim. P. 29.  In making its decision the court

> must review the record in the light most
> favorable to the prosecution to determine
> whether any rational trier of fact could have
> found proof of guilty beyond a reasonable
> doubt based on the available evidence.  A
> finding of insufficiency should be confined
> to cases where the prosecution's failure is
> clear.  Courts must be ever vigilant in the
> context of [Rule] 29 not to usurp the role of

> the jury by weighing credibility and
> assigning weight to the evidence, or by
> substituting its judgment for that of the
> jury.

United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005)
(internal quotations and citations omitted).

    Although our decisions with respect to Rivera and
Kinchen do not control our decisions with respect to Jaudon and
Joseph, "the power to grant a motion for a new trial is broader
than the court's power to grant a motion for a judgment of
acquittal." United States v. Davis, 397 F.3d 173, 181 (3d Cir.
2005).  Therefore, if the weight of the evidence is such that a
defendant is not entitled to a new trial, he is necessarily not
entitled to a judgment of acquittal.

    John Jaudon has submitted a pro se letter to the court
requesting a Rule 29 judgment of acquittal, and his attorney has
adopted the motion.  Jaudon lists four grounds for his motion.
First, he asserts he did not view the grand jury transcripts or
discovery until three weeks prior to trial.  Second, he maintains
that he did not sign the stipulation entered into by his counsel
and the Assistant United States Attorney, which stated that
Jaudon was not in Easton, Pennsylvania between March, 2007 and
June, 2007.[9]  Third, he alleges that Rogers lied to the grand

---

9.  Jaudon's attorney read into the record, with the consent of
the government, a stipulation that Jaudon was not in Easton for a
four month period in 2007, which coincided with a portion of the
time Rogers admitted he was selling crack cocaine to street
dealers in Easton.  This stipulation therefore inures to Jaudon's
benefit.

jury about selling drugs to Jaudon "all of 2007."  Fourth, he appears to complain that Magistrate Judge Hey did not sign a copy of his arrest warrant.

The sole ground under Rule 29 for a judgment of acquittal is a conviction not supported by sufficient evidence. Nowhere in his letter does Jaudon make an argument concerning the sufficiency of the evidence introduced against him.  Indeed, the government introduced more than adequate evidence to support the jury's verdict of guilty on Count 13, possession with intent to distribute cocaine base ("crack") on or about December 15, 2007 at approximately 5:57 P.M.

In addition to the evidence described above, telephone records established more than 200 contacts between Jaudon's telephone and Rogers' telephone over a period of months, and Rogers testified that his relationship with Jaudon was strictly related to the sale of crack cocaine.  Rogers testified that he only sold Jaudon eightball amounts.  Expert testimony established that an eightball quantity of crack cocaine is consistent with intent to distribute.

Numerous recordings of wiretapped telephone conversations between Jaudon and Rogers were played for the jury in which Jaudon and Rogers hastily arranged meetings.  Videotaped recordings of Jaudon also showed him engaging in brief meetings with Rogers.  Rogers testified that at each of these encounters he sold at least one eightball of crack cocaine to Jaudon.  An excerpt of the six recorded telephone conversations between

Rogers and Jaudon on December 15, 2007, the date relevant to his conviction on Count 13, included the following exchange at about 5:27 P.M.:

>        Rogers: Yo.
>        Jaudon: Can you come and see me?
>        Rogers: Yeah. What you want, one?
>        Jaudon: Yeah, just one.
>        Rogers: Alright.
>        Jaudon: Alright.

Approximately a half hour later, the following was recorded:

>        Jaudon: Hey Sean what's up?
>        Rogers: Yeah.  I'm outside.
>        Jaudon: Alright.

Viewing the record in the light most favorable to the prosecution, we conclude that a rational trier of fact could find beyond a reasonable doubt that Jaudon purchased an eightball of crack cocaine with intent to distribute it on December 15, 2007. Accordingly, we will deny Jaudon's motion for judgment of acquittal.

Finally, Julian Joseph has submitted a pro se motion for judgment of acquittal.  The government maintains that his motion is untimely.  A defendant may make or renew a motion for judgment of acquittal within seven days after a guilty verdict. Fed. R. Crim. P. 29.  The calculation of the seven day period excludes intermediate Saturdays and Sundays.  Fed. R. Crim. P. 45(a)(2); Carlisle v. United States, 517 U.S. 416, 418 (1996). Under the prison mailbox rule, a prisoner's motion is deemed filed on the date that he delivers it to prison officials for mailing.  See Houston v. Lack, 487 U.S. 266, 270-74 (1988).  The

jury in this case returned its verdict and was dismissed on Wednesday, April 8, 2009. Excluding the intermediate Saturday and Sunday, Joseph therefore had until Friday, April 17, 2009, to file his motion. The signature line on Joseph's motion is dated April 16, 2009, and it was received by the court on April 20, 2009. The exact date Joseph delivered his motion to prison officials is not known, but we will accept April 16, the date when he executed his signature, as the date of filing. <u>See</u> <u>Henderson v. Frank</u>, 155 F.3d 159, 163 (3d Cir. 1998). Thus, contrary to the government's contention, Joseph's motion was timely filed.[10]

Turning to the merits of Joseph's motion, he argues that he is entitled to a judgment of acquittal for three reasons: (1) he has not received transcripts of grand jury testimony, which he believes contain false statements; (2) "the prosecution failed to show the footage of 'Sean Rogers' [i]nvolved in other drug transactions, which would have been exculpatory to the defendant"; and (3) the government introduced a fabricated inventory list of items confiscated from Joseph's home.

As stated above, the sole ground for a judgment of acquittal is insufficient evidence. Joseph has not made this argument. Moreover, even if we disregard the items found during

---

10. The government also argues in a footnote that we should not consider Joseph's <u>pro se</u> motion because he is represented by counsel. However, we disagree with the government's interpretation of <u>McKaskle v. Wiggins</u>, 465 U.S. 168, 183 (1984) and conclude that it is inapplicable to this case.

the consent search of his home, there was more than sufficient
evidence upon which the jury could rely to return a verdict of
guilty on Counts 17 and 18 (possession with intent to distribute
cocaine base ("crack") on or about October 20, 2007 and on or
about October 26, 2007).

In addition to the evidence already discussed with
respect to the other defendants, telephone records established
approximately 788 contacts between Rogers' telephone and Joseph's
telephone over a several month period.  Rogers testified that his
relationship with Joseph was limited to the sale of crack
cocaine.  A recorded wiretapped telephone conversation between
Rogers and Joseph on October 20, 2007, the relevant date for
Count 17, included the following dialogue:

> Rogers: What you wanted, one?
> Joseph: Yeah, you going to be around tonight?
> Rogers: Not late.  Tonight I'll be, I'm
>         leavin' at around like six.  I got--
>         my man got a show in Allentown.
> Joseph: Okay, well bring me two.
> Rogers: Alright.

This was followed by a call approximately a half an hour later in
which Rogers tells Joseph "I'm right here downstairs, at the
door."  Rogers testified that he sold Joseph two eightballs of
crack cocaine on October 20, 2007.

On October 26, 2007, the relevant date for Count 18, a
recorded wiretapped telephone conversation between Rogers and
Joseph included this exchange:

> Rogers: I'm doing it up right now so give me
>         like fifteen minutes and I'll be
>         there.  Alright?

-13-

Joseph: Alright, alright.

Rogers testified that at the time of this call he was cooking cocaine powder into crack cocaine and that he sold two eightballs to Joseph later that day.  Expert testimony established that the purchase of eightballs is consistent with an intent to distribute crack cocaine.  When we view this record in the light most favorable to the prosecution, we conclude that a rational jury could find beyond a reasonable doubt that Joseph was guilty. Accordingly, we will deny his motion for judgment of acquittal.